UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ORION CONSTRUCTION GROUP, LLC,

      Plaintiff,

v.                                       Case No. 07-C-10

BERKSHIRE WIND POWER, LLC, and
NOBLE BERKSHIRE WINDPARK, LLC,

      Defendants.

**ORDER GRANTING MOTION TO DISMISS**

      Plaintiff Orion Construction Group, LLC, ("Orion") brought a breach-of-contract suit in Wisconsin state court against Berkshire Wind Power, LLC, ("Berkshire") and Noble Berkshire Windpark, LLC. Berkshire timely removed the case to this court and then filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the District of Massachusetts. Orion has not responded to the motion. For the following reasons, the motion to dismiss will be granted.

**FACTUAL BACKGROUND**[1]

      Plaintiff Orion is a Wisconsin limited liability company with its principal place of business in Outagamie County, Wisconsin.[2] Although Orion named Noble Berkshire Windpark, LLC, as

---

[1] Because plaintiff has not submitted any affirmative evidence supporting the exercise of jurisdiction, defendant Berkshire's version of disputed facts, to the extent it is supported by affidavit, will be presumed true for purposes of this motion. *See* discussion under the analysis section of this order.

[2] For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. *See Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006). Therefore, Orion's representation in its state-court pleading that it is a Wisconsin limited liability company

a defendant in its state court complaint, this entity has not been formed.[3] (Aff. of Krista Gordon ¶ 3.) According to Berkshire's notice of removal, Noble Berkshire Windpark was a contemplated entity to be formed upon completion of negotiations for, and purchase of, certain assets from Berkshire, but the negotiations have not come to fruition. (Notice of Removal ¶ 2.) Defendant Berkshire is a Delaware limited liability company that is fully owned by Distributed Generation Systems, Inc., a Colorado corporation with its principal place of business in Evergreen, Colorado. (Amendment to Notice of Removal ¶ 2.) Berkshire is therefore a citizen of Delaware and Colorado pursuant to 28 U.S.C. § 1332(c)(1).

Berkshire was formed for the sole purpose of constructing and operating a 15-megawatt wind facility in Massachusetts ("the Massachusetts Project"), and it has not been involved in any other projects. In late 2004, Berkshire decided to re-bid the Massachusetts Project after its existing general contractor withdrew. Orion contacted Berkshire around that time to solicit work in the area of construction services for wind facilities. Berkshire invited Orion and other contractors to bid for the civil, electrical, and erection services for the Massachusetts Project. Berkshire awarded the contract to Orion in January of 2005, and on May 13, 2006, the parties formalized their agreement.

Disputes later arose between the parties, with each side claiming breach of contract by the other. Orion's state-court claim is that Berkshire has failed to pay for services rendered, despite

---

does not enable the court to determine whether the parties are completely diverse. The court need not pursue this possible jurisdictional defect, however, in light of the court's lack of personal jurisdiction over defendant, which warrants dismissal of the entire case. *See, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) (stating that a court may dismiss for lack of personal jurisdiction before reaching subject matter jurisdiction)

[3] Apparently, an entity named Noble Environmental Power, LLC, was negotiating with Berkshire for purchase of the wind power facility at issue here (*see* Aff. of Krista Gordon Ex. B at 1), but Orion did not name that entity as a defendant.

Orion's repeated demands. Conversely, Berkshire claims Orion failed to follow the Massachusetts Project site plan and thereby trespassed on, and damaged, neighboring private party. Because of Orion's actions—or so Berkshire claims—Berkshire has been named as a defendant in a suit currently pending in federal court in Massachusetts. Furthermore, Berkshire argues that Orion failed to pay its subcontractors for work performed on the project, and that Berkshire was forced to pay them off at a cost of roughly $775,000.

On January 4, 2007, Orion filed a breach-of-contract suit in Outagamie County Circuit Court against Berkshire and Noble, which Berkshire then removed to this court on February 8, 2007. Presently before me is Berkshire's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the District of Massachusetts. Orion has not responded to the motion.

**ANALYSIS**

Personal jurisdiction is an essential element of the jurisdiction of the court, without which the court is powerless to proceed to an adjudication of the merits of a lawsuit. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (citing *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). A complaint need not include facts alleging personal jurisdiction, but once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating its existence. *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). When confronted with a motion to dismiss for lack of personal jurisdiction, the court may either hold an evidentiary hearing or rule on the motion based on the submission of written materials, without the benefit of an evidentiary hearing. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When a district court rules

on such a motion without an evidentiary hearing, the plaintiff needs to make only a prima facie case of personal jurisdiction. *Id.* Once the defendant submits evidence opposing the exercise of jurisdiction, however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. In evaluating whether the prima facie standard has been satisfied, the court is to resolve all factual disputes in favor of the plaintiff. *Id.* at 782.

A federal court has personal jurisdiction over a diversity case only if a court of the state in which the federal court sits would have jurisdiction. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir. 1986). Under Wisconsin law, determining whether personal jurisdiction may be exercised requires a two-step inquiry. First, the court must determine whether defendants are subject to jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, 629 N.W.2d 662, 667 (Wis. 2001). Second, if the statutory requirements are satisfied, the court must decide whether the exercise of jurisdiction comports with the requirements of due process. *Id.*

Wisconsin's long-arm statute, unlike some other states' long-arm statutes, is intended to reach to the fullest extent allowed under the Due Process Clause. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990); *State ex rel. N.R.Z. v. G.L.C.*, 447 N.W.2d 533, 535 (Wis. 1989). Compliance with the statute raises a rebuttable presumption that the exercise of personal jurisdiction pursuant to the statute is consistent with due process requirements. *Mamco Corp. v. Max Buchanan Co., Inc.*, 793 F. Supp. 200, 202 (E.D. Wis. 1992) (citations omitted). A nonresident defendant may rebut this presumption by showing that its contacts with Wisconsin are insufficient to submit it to suit in a Wisconsin forum. *Id.* (citation omitted).

Personal jurisdiction may be either specific or general. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). General jurisdiction exists only when a party has "continuous and systematic" contacts with the forum state, while specific jurisdiction is established when a lawsuit "arises out of" or is "related to" a party's minimum contacts in the forum state. *Id.* For both types of personal jurisdiction, the court's due process inquiry involves two steps. First, the court determines whether the defendant "purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Next, the court considers those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The critical inquiry is whether the defendant has "purposely availed" itself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there. *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (citing *Burger King*, 471 U.S. at 474-75).

In its state-court complaint, Orion alleges that Berkshire is a foreign corporation "doing business in Wisconsin," and that the parties' agreement regarding the Massachusetts Project was negotiated in person in Outagamie County by Orion's president; Berkshire's agent, Krista Gordon; and Noble's agent,[4] Jeffrey Taylor. (Notice of Removal Part 2 at 3.) Orion also alleges that

---

[4] Given that the only "Noble" entity named in Orion's complaint is Noble Berkshire Windpark, LLC, the agent is presumably alleged to be an agent for that company rather than for Noble Environmental Power, LLC, with whom Berkshire was apparently negotiating for the sale of the wind power project. *See* note 3.

5

negotiations were conducted via telephone and facsimile communications to, or from, Outagamie County. (*Id.*) However, these allegations are unsupported by any affirmative evidence.

By contrast, Berkshire has submitted the affidavit of Krista Gordon, who from the fall of 2003 until October of 2006 worked for Berkshire on the Massachusetts Project. (Aff. of Krista Gordon ¶ 1.) From August 2003 until 2006, Gordon was a manager of engineering for Distributed Generation System, Inc., the Colorado corporation that wholly owns Berkshire. (*Id.*) According to Gordon, Orion contacted her on November 3, 2004, via e-mail to solicit work for construction of wind facilities. (*Id.* ¶ 5.) At no time during the course of the formation and negotiation of the contract did any agent or representative of Berkshire travel to Wisconsin for the purpose of negotiating or forming the contract. (*Id.* ¶ 10.) Gordon avers she is the only Berkshire representative who ever visited Orion in Wisconsin, having done so on or about February 10, 2005, after Berkshire had awarded Orion the contract. (*Id.* ¶ 10.) The primary purpose of her trip was to consult with the Menomonee Indian Tribe on behalf of Distributed Generation Systems, regarding a business venture wholly unrelated to Berkshire. (*Id.*) Because she was already in Wisconsin, Gordon stopped at Orion's facilities to meet with its president and with the project developer who had initially solicited Berkshire's business. The visit lasted no more than two hours and consisted of nothing beyond introductions and general discussions regarding the nature of the parties' respective businesses. (*Id.*) At no time did Gordon engage in any discussions regarding the negotiation, formation, or performance of Berkshire's contract with Orion. (*Id.*)

On the evidence submitted, Berkshire's other contacts with Wisconsin appear minimal to nonexistent. Berkshire is not, and has never been, located in Wisconsin. (*Id.* ¶ 4.) It does not transact business in Wisconsin, has no offices or other facilities in Wisconsin, and has no bank

6

accounts, employees, telephone listings, or real or personal property in Wisconsin. (*Id.*) Berkshire has never advertised or solicited investors in Wisconsin, conducted any advertising or solicitation activities in Wisconsin, and has never been registered to do business in Wisconsin. (*Id.*) Berkshire's contract with Orion regarding the Massachusetts Project is the only contract it has ever entered with a Wisconsin entity. (*Id.* ¶ 17.) Furthermore, Berkshire contracted with Orion for services to be performed exclusively in Massachusetts, and Orion's work for the project took place entirely in Massachusetts. (*Id.* ¶ 11.) Berkshire never anticipated or intended that any of Orion's work for the project would be done in Wisconsin. (*Id.*) Berkshire never contemplated that any goods manufactured in Wisconsin would be used in the project, nor were any such goods so used. (*Id.*)

Again, Orion has submitted no affirmative evidence to counter Berkshire's evidence that personal jurisdiction is not warranted here. Orion has not even cited to Wisconsin's long-arm statute generally, much less to any provision therein. Even if it had, no section of the statute confers personal jurisdiction over Berkshire—either specific or general—given the facts set forth in Berkshire's uncontested evidence.

On the facts of the record, the only sections of Wisconsin's long-arm statute that could conceivably confer jurisdiction would be either the specific jurisdictional provisions governing contract actions, Wis. Stat. § 801.05(5), or the general jurisdictional provisions governing local presence or status, Wis. Stat. § 801.05(1). However, none of Berkshire's contacts with Wisconsin falls under the statute's specific jurisdictional provisions governing contract actions. Berkshire did not promise to perform services within Wisconsin, and the contract took place entirely within Massachusetts. *See* Wis. Stat. § 801.05(5)(a). Berkshire did not perform any services within

7

Wisconsin or ratify the performance of such services. *See* Wis. Stat. § 801.05(5)(b). Berkshire did not promise to deliver or receive in Wisconsin or ship from Wisconsin any goods, documents of title, or other things of value. *See* Wis. Stat. § 801(5)(c). The contract did not involve goods, documents of title, or other things shipped from Wisconsin at Berkshire's direction, and, in fact, did not involve the sale or shipment of goods from any location. *See* Wis. Stat. § 801.05(5)(d). Berkshire has never been located in Wisconsin, nor received delivery of goods, documents of title, or things of value in Wisconsin. *See* Wis. Stat. § 801(5)(e).

Similarly, the general jurisdictional provisions of Wisconsin's long-arm statute do not confer personal jurisdiction over Berkshire. Since Berkshire is neither a natural person nor domiciled in Wisconsin, the only relevant provision here is the one covering nonresident defendants, which requires the person to be engaged in "substantial and not isolated activities" within Wisconsin. Wis. Stat. § 801.05(1)(d). A person is engaged in substantial activities within the state when the activities are "systematic and continuous." *Harley-Davidson Motor Co. v. Motor Sport, Inc.*, 960 F. Supp. 1386, 1389 (E.D. Wis. 1997) (internal quotation and citation omitted). Wisconsin courts consider five factors when determining whether a defendant's contacts are "substantial and not isolated" under Wis. Stat. § 801.05(1)(d): (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the sources of the contacts and their connection with the cause of action; (4) the interests of the State of Wisconsin; and (5) the convenience of the parties. *Druschel v. Cloeren*, 2006 WI App 190, 723 N.W.2d 430, 434 (Wis. Ct. App. 2006) (citing *Nagel v. Crain Cutter Co.*, 184 N.W.2d 876, 881-82 (1971)). Qualifying activities under § 801.05(1)(d) will be found where the defendant has "solicit[ed], create[d], nurture[d], or maintain[ed], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the

state." *Stauffacher v. Bennett*, 969 F.2d 455, 457-58 (7th Cir. 1992) (applying Wisconsin long-arm statute).

Applying this five-factor test to the facts of this case, I conclude that Berkshire's contacts with Wisconsin fail to bring it within the reach of the general jurisdiction provision of Wisconsin's long-arm statute. Berkshire entered into a one-project contract with one Wisconsin entity, and that contract was to be performed entirely in Massachusetts. Furthermore, Orion, and not Berkshire, solicited this contract. Only one representative of Berkshire ever visited Wisconsin for any purpose related to Berkshire. That visit took place in conjunction with a separate business trip on behalf of a different client, and took place after Orion had already been awarded the Massachusetts Project. The visit did not relate to the negotiation, formation, or performance of Berkshire's contract with Orion. Any other contact with Orion in Wisconsin was by telephone, facsimile, or correspondence, although the extent of such contact is unclear from the record.[5] In addition, the interests of the State of Wisconsin in protecting its citizens from breaches of contract seem less weighty here than the competing interests of Massachusetts, where related litigation is pending and where the project site and the vast majority of likely witnesses are located. (*See* Aff. of Krista Gordon ¶¶ 12, 14-16.) Many essential witnesses for Berkshire—for example, Massachusetts subcontractors and the adjacent property owners—would be beyond the subpoena power of a Wisconsin court. *See* Fed. R. Civ. P. 45(b)(2). Even if these witnesses agreed to appear voluntarily in Wisconsin, it would be

---

[5] Berkshire argues that its long-distance communications with Orion were "minimal at best." (Br. in Supp. of Motion to Dismiss at 10.) However, the evidence submitted by Berkshire is silent as to whether it engaged in long-distance communications with Orion directed at some purpose other than the contract. Given that Berkshire was formed solely for purposes of the Massachusetts Project, however, such a possibility seems remote.

9

much more expensive and inconvenient to procure their appearance in Wisconsin than in their home state.

Finally, even if personal jurisdiction were authorized under Wisconsin's long-arm statute, the exercise of that jurisdiction would not comport with the requirements of due process in these circumstances. The Due Process Clause protects a person's liberty interest in not being subjected to the binding judgments of a forum with which the person has established no meaningful contacts, ties, or relations. *Int'l Shoe*, 326 U.S. at 319. The constitutional touchstone remains whether the defendant established "minimum contacts" with the forum state. *Id.* at 316. A single contract between a resident of a state and a nonresident is by itself insufficient to establish such "minimum contacts." *See Burger King Corp.*, 471 U.S. at 478-79. In *Burger King*, the United States Supreme Court noted that a contract is ordinarily just an intermediate step serving to tie up prior business negotiations with future consequences, and that it is these negotiations and future consequences, along with the contract's terms and the parties' course of dealings, that must be evaluated in determining whether minimum contacts exist. *Id.* at 479.

Here, Berkshire did not "purposefully avail" itself of the privilege of conducting activities in Wisconsin or the benefits of Wisconsin law. While Berkshire clearly derived some benefit from the contract, the terms of that agreement were not governed by Wisconsin law (Aff. of Krista Gordon Attach. 3 § 42 (stating New York law governs the agreement)), and did not require Berkshire to perform any acts in Wisconsin. Other than the contract itself, Berkshire's contacts with Wisconsin consisted of long-distance communications relating to the contract and Gordon's visit as a matter of convenience after Orion had already been selected as general contractor. These contacts, even when coupled with the contract itself, are insufficient to warrant jurisdiction over

10

Berkshire. *See Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.*, 597 F.2d 596, 604 (7th Cir. 1979) (noting that "[u]se of the interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed"); *Uni-Bond, Ltd. v. Schultz*, 607 F. Supp. 1361, 1370-71 (D.C. Wis. 1985) (finding personal jurisdiction not warranted where nonresident defendant entered into single contract with Wisconsin plaintiff, parties regularly corresponded by mail and telephone regarding performance of the contract, and representative of defendant made one visit to plaintiff's representatives in Wisconsin as a matter of convenience while primary purpose of trip lay elsewhere).

As to defendant Noble Berkshire Windpark, LLC, the record indicates that this defendant does not exist. Noble Berkshire Windpark will therefore be dismissed. *See McGuckin v. Smith*, 974 F.2d 1050, 1056-57 (9th Cir. 1992) (stating that district courts "likely" have the authority to dismiss nonexistent defendants even though there appears to be no explicit basis for this authority in the Federal Rules of Civil Procedure or in federal statutes); *Oliver v. Swiss Club Tell*, 35 Cal. Rptr. 324, 329 (Cal. Ct. App. 1963) (stating that where a suit is brought against a legally nonexistent entity, the proceeding is void ab initio).

## CONCLUSION

On the record before me, Berkshire's activities do not come within the reach of Wisconsin's long-arm statute. Even if they did, the exercise of personal jurisdiction in these circumstances would not comport with the requirements of due process.

**IT IS THEREFORE ORDERED** that defendant Berkshire's motion to dismiss plaintiffs' claims for lack of personal jurisdiction is **GRANTED**. Dismissal is without prejudice. As named

defendant Noble Berkshire Windpark does not exist, plaintiff's claims against it are likewise **DISMISSED**.

Dated this   13th    day of April, 2007.

						  s/ William C. Griesbach						
						William C. Griesbach
						United States District Judge

12

Case 1:07-cv-00010-WCG   Filed 04/13/07   Page 12 of 12   Document 20